Welch, J.
We are unable to see on what principle this instruction of the court, or the finding of the jury in the case, can be sustained. The agreement of September 5, 1863, was merely executory; the firm was still subsisting at Ault’s death, and by that event all its property and effects became legally vested in Gorton as surviving partner. . This would have been the result, even had the agreement contained no provision postponing its execution till the 1st of January following. As such surviving partner Gorton had a right to apply the. assets of the firm in payment of its debts, and to deliver over to the executors of Ault only what should remain, if anything, after payment of those debts, including the sum stipulated to be paid to him. Nay, in case of the insolvency of Ault’s estate, or of reasonable ground to suspect such insolvency, it was his duty so to do; and any creditor of the firm, by alleging such insolvency, could have compelled the performance of that duty. Had Ault survived till January 1, 1864, when the partnership was to terminate, the fact of such insolvency would have been a sufficient ground to enable Gorton himself, as well as his creditors, to institute the necessary proceedings for compelling the application of the assets of the firm to the payment of partnership debts, in preference to the individual debts of Ault. By the agreement between the parties, Ault was to take the firm property and pay the firm debts. He took the benefit with the burden — a burdeu which the law itself, in case of supervening insolvency, would impose, to the extent of the assets, in the absence of any express provision to that effect in the contract. It is quite clear to us, therefore, that the court erred in its instruction to the jury, to the effect that by virtue of the agreement of September 5, 1863, the property, upon the death of Ault, ipso facto, became the absolute property of Ault’s estate. We are of opinion also that the evidence did not warrant the finding of the jury. It is true that the right of preference which equity gives to the creditors of a firm over those of an insolvent partner may be, and often is, defeated by the wrongful act of the part» *472 ners, in converting the assets of the concern to the individual use of the insolvent partner; but such wrongful conversion will never be presumed, and must be clearly proven, in order to defeat the rights of the creditors. We think the evidence here shows no such wrongful act of conversion, and that we are fairly left to the inference that Kreis was paid, as in equity he should have been paid, out of the assets of the firm. He so understood it at the time, and rested in that understanding. He was paid out of funds standing in bank to the credit of the firm, and not of the executors, and by a check drawn in the firm name by its surviving partner. There is nothing to show how or when these funds were placed in bank, or whether they were the proceeds of Gorton’s unauthorized continuance of the business after Ault’s death, or funds accruing in the management of the business during the seven days which intervened between the qualification of the executors and the day of payment. I say Gorton’s “unauthorized” continuance of the business, because he had no authority as .surviving partner to continue it. His only power as such was to wind up the concern, by applying its assets to the payment of its debts, and handing the remainder of the assets, if any, over to the executors. The power given by the will to carry on the business was given to the executors, and could not be exercised until they were qualified as such. Debts contracted by Gorton, in the management of the business between September 6th and January 7th, were his own individual debts, and did not bind the estate. Money received by him for goods purchased on his credit during that time, and placed in bank, would seem to be his own money. Such money, or money derived from the assets of the firm, when so placed in the bank as partnership funds, can not be considered as actually delivered to the executors, by any mere private agreement or understanding between them. While such private agreement might bind them, it would not constitute an actual delivery of the money so far as the rights of third persons were concerned. To constitute such delivery, some act, such as the transfer or placing of the *473 funds in bank to the credit of the executors, was necessary, •in order to affect the rights of third persons,'and especially third persons ignorant of the private agreement. As to such persons the rights of the estate to the funds were no greater, or other, than they were by the executory agreement of September 5, 1868.
The fact that the creditors of Ault’s estate were also creditors of the firm, has no significance, in the case. The law applicable to it is the same it would have been, had they been creditors of Ault alone. As creditors of Ault and Gorton they have no right to insist on a pro rata distribution. Gorton had the right to pay the claims against the .firm in the order of llieir presentation, and to pay them in full, t,o the exclusion of those hot presented. It is only as creditors of Ault that they can insist upon a pro rata distribution, and it is in their interest as such alone that this action can be maintained.
For the error of the court in charging the jury, and in refusing a new trial, the judgment must be reversed, and -the cause remanded for further proceedings.

Judgment accordingly.